# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATRICIA DIANE LEWIS**, <br> **17108 Ashton Court** <br> **Accokeek, MD 20607** <br><br> Plaintiff, <br><br> v. <br><br> **GOVERNMENT OF THE DISTRICT OF COLUMBIA** ; **MAYOR VINCENT C. GRAY,** *in his official capacity as Mayor of the District of Columbia;* **CHARLES T. TUCKER; SHAWN Y. STOKES; ASHA BRYAN**T; and Does 1 through 50, inclusive, <br> **1350 Pennsylvania Avenue NW** <br> **Washington, DC** <br><br> Defendants. | Case No.: 15:CV:521 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1.  WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY <br> 2.   INTRUSION OF FOURTH AMENDMENT RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 <br> 3.  RETALIATION IN VIOLATION OF TITLE VII; <br> 4.  DISCRIMINATION IN VIOLATION OF D.C. HUMAN RIGHTS ACT <br> 5.  VIOLATION OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION <br> 6.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS <br><br> INJUNCTION RELIEF <br><br> **JURY TRIAL DEMANDED** |

PATRICIA DIANE LEWIS alleges as follows:

## INTRODUCTION

1. Plaintiff PATRICIA DIANE LEWIS brings this claim to vindicate her federal and state constitutional, statutory and common law rights, and alleges that DEFENDANTS, and each of them, wrongfully terminated her employment, violating her rights protected by The Civil Rights Act of 1964, as Amended, Title VII, violated her rights protected by the D.C. Human Rights Act, and violated her rights protected by the United States Constitution, including the First, Fourth and Fourteenth Amendments.

2. The D.C. Human Rights Act aims to provide every individual with an equal opportunity to participate in "all aspects of life," including, but not limited to, employment. The District of Columbia law prohibits employment discrimination based wholly or partially on marital status, personal appearance, sexual orientation, family responsibility, matriculation, and political affiliation, in addition to race, color, religion, sex, age, national origin, and physical handicap. The

law prohibits discrimination based on these protected categories in: (1) hiring, discharge, compensation, terms, conditions, and privileges (including promotions); (2) employment referrals and classifications; (3) job training, apprenticeships, and job advertisements. The law also makes it unlawful to take employment action for any reason that would not have been asserted but for a discriminatory purpose based on one of these protected categories. *See* D.C. Code Ann. § 2-1402.11.

3. Claimant PATRICIA DIANE LEWIS, (hereinafter "MS. LEWIS OR CLAIMANT"), alleges that DEFENDANT DISTRICT OF COLUMBIA (hereinafter "D.C. GOVERNMENT") and DEFENDANTS **MAYOR VINCENT C. GRAY, CHARLES T. TUCKER, SHAWN Y. STOKES, ASHA BRYAN**T ("INDIVIDUAL DEFENDANTS") and managing agents of Respondents/Defendants retaliated against her for engaging in protected activity and speech; treated her discriminatorily, differently from other employees based on filing complaints regarding discrimination, denial of due process, and violations of her United States Constitutional Rights, including her First, Fourth, Fourteenth Amendments Rights to Free Speech, Right of Privacy, and Right of Due Process, Liberty, Property and Equal Protection, respectively.

4. Defendants wrongfully terminated Ms. Lewis' employment of over 10 years in violation of public policy and as an act of retaliation because Ms. Lewis participated in protected activity, including exercising her Right of Free Speech by complaining about Defendants' violations of her rights and the rights of her fellow employees. The issues, discrimination and retaliation against her were motivated by her gender, race, color, disability, medical condition, national origin, and age, her exercise of free speech, as well as other protected classifications. Ms. Lewis further alleges that Respondents/Defendants engaged in an illegal, continuing and ongoing pattern and practice of retaliation and discrimination, and additionally engaged in the conduct of actively creating and maintaining a hostile work environment, in which employees and staff are rendered mute because of a palpable fear of retaliation. As a direct, actual and proximate cause of Defendants' illegal conduct, Claimant Lewis suffered economic and non-economic damages, including humiliation, damage to reputation, loss of enjoyment of life and severe mental and emotional distress.

## JURISDICTION AND VENUE

5. Ms. Lewis brings this action pursuant to the laws of the District of Columbia, the D.C. Human Rights Act, Title VII of the 1964 Civil Rights Act, as amended, Employment Act of 1967 as amended, Americans with Disabilities Act of 1990 as amended, and 42 U.S.C. Section 1983. Jurisdiction is founded upon 28 U.S.C. § 1331.

6. Venue is proper in this judicial district because Claimant/Plaintiff's injuries, damages and harm, including the violation of Plaintiff's Civil Rights, occurred in this judicial district.  Further, one or more of the DEFENDANTS reside, are headquartered and conduct business in this judicial district.

7. DEFENDANTS are subject to suit in this Judicial District and are public entities that regularly employ 500 or more persons.

8. DEFENDANT GOVERNMENT OF THE DISTRICT OF COLUMBIA is an agency of the DISTRICT OF COLUMBIA. Each individual Defendant, MAYOR VINCENT C. GRAY, CHARLES T. TUCKER, SHAWN Y. STOKES, and ASHA BRYANT is a "person" within the meaning of 42 U.S.C. 2000e(a) and an "employer" within the meaning of 42 U.S.C. 2000e(b), and are managing agents of Defendant DISTRICT OF COLUMBIA.

### PARTIES

9. Claimant/Plaintiff Lewis is a citizen of the United States of America and is a resident of Accokeek, MD.

10. DEFENDANT GOVERNMENT OF THE DISTRICT OF COLUMBIA is located in the DISTRICT OF COLUMBIA. On information and belief, individual Defendants, **MAYOR VINCENT C. GRAY, CHARLES T. TUCKER, SHAWN Y. STOKES, ASHA BRYAN**T, are residents of the District of Columbia.

### RESPONDEAT SUPERIOR

11. All of the described conduct, acts, and failures to act are attributed to agents and managing agents of DEFENDANT GOVERNMENT OF THE DISTRICT OF COLUMBIA. Said acts, conduct and failures to act were within the scope of such agency and employment.

12. At all times relevant herein, each participant was acting within the course and scope of his or her employment and agency.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13.  Ms. Lewis, the Plaintiff, has exhausted her administrative remedies by submitting a government tort claim prior to filing this complaint. Additionally, Plaintiff has attempted to use the administrative process to seek redress of the issues raised in this complaint. Plaintiff filed charges of discrimination with an EEOC Claim on December 29, 2013 and D.C. Office of Human Resources on July 20, 2012. Said grievance was denied on August 30, 2012.  Plaintiff received her Right-to Sue letter from the EEOC on March 18, 2015. Plaintiff has not received her Right-to Sue letter from the DCOHR but will amend this claim after she receives it.

**WORKERS COMPENSATION IS NOT EXCLUSIVE REMEDY**

14.  Each and every wrongful, injurious, intentional, willful, discriminatory, harassing act or failure to act, by DEFENDANTS, were not normal incidents of employment and         were outside the scope of the employment bargain. Thus, Workers Compensation         exclusive remedy will not preempt, nor bar Plaintiff's right to recover for damages set forth herein.

**STATEMENT OF FACTS**

15.  Ms. Patricia Diane Lewis, HR Advisor, Management Liaison Specialist, with the Office of the Chief Medical Examiner, was employed by the D.C. GOVERNMENT since initially around 2005 and again around 2007 until her wrongful termination on April 9, 2013.

16.  On July 18, 2012, at or around the morning during a general staff meeting Defendant Charles T. Tucker, Attorney for Defendant D.C. Government, convened a meeting with the employees of the Office of the Chief Medical Examiner, regarding the Mayor's Order ("MO") mandating Background Checks, Investigations, and Criminal Background Investigations of all employees as a prerequisite to the Relocation to the Consolidated Forensic Laboratory. Defendant Tucker stated in the meeting:  "you only have until 4:00 pm today to sign the notification, or you will be fired."

17.  The demand included that PLAINTIFF execute a Notification of Drug and Alcohol Testing Form, which form would require PLAINTIFF to disclose any current medications—such disclosure wrongfully intrudes upon PLAINTIFF'S right to privacy regarding any medical condition she may have, including a disability.

18.  In response to Defendant Tucker's short fused, time limited ultimatum that was given without any

prior notification, Ms. Lewis immediately protested both the abrupt notification and the rational basis for such invasion of her privacy, expressing verbally and in writing that such government actions were a violation of her due process right to fair notice, and an invasion of her constitutional rights of privacy, guaranteed by the Fourth Amendment of the United States Constitution. Additionally, on July 20, 2012, Ms. Lewis sent a letter to Defendant Tucker, stating that "[she] was hired into a non-sensitive position that has not been reclassified, nor designated as high risk. During the meeting, you [Tucker] stated that you were aware that the positions needed to be looked at and that a review of positions might be done in the future." No such review of Ms. Lewis' position was discussed with her. Instead, on January 3, 2013, Defendant D.C. Government issued Ms. Lewis a fifteen-day (15-day) advance written notice regarding a proposal to remove her, for cause, from her position of Management Liaison Specialist, CS-343- 13 in the Office of the Chief Medical Examiner (OCME).

19. On April 9, 2013, Defendant D.C. Government indeed terminated Ms. Lewis' employment. The D.C. Government unlawfully created a "Catch 22" for Ms. Lewis: Either to give up her job, or to give up her constitutional rights. The D.C. Government failed to respond to Ms. Lewis' request that the D.C. Government provide her with alternate employment which does not require her to give up her civil rights guaranteed by the U.S. Constitution.

20. Prior to her termination, on October 15, 2012, Ms. Lewis, through her attorney, asked her government employer to permit her to seek employment with another agency, or alternately, to exempt her from all of the background checks referred to in the MO. The D.C. Government failed to grant this written request, opting to proceed resolutely with the wrongful termination of Ms. Lewis' employment.

21. Defendant Charles Tucker sent a letter dated August 30, 2012, and Defendant Shawn Y. Stokes, Director of the Department of Human Resources, sent a letter dated October 5, 2012, both citing the Mayor's Order as providing: "*Delegation of Personnel Authority to Identify and Designate Positions Subject to, and Conduct, Background Checks, Investigations, Criminal Backgrounds Investigations, or Testing for Controlled Substances Use for Employees of the Office of the Chief Medical examiner ("OCME"), and Department of Forensic Sciences ("DFS"), and any*

*Other District Government Employee Having a Duty Station at the Consolidated Forensic ("CFL"), that due to the nature of work performed in the CFL, employees occupying positions which have duty stations at the CFL, and due to the relocations of your position to the new facility, you will be subject to mandatory criminal background checks and testing for controlled substance use in accordance with this order. In addition to the above-mentioned checks, traffic records checks may also be required."*

22. The MO is unconstitutionally overbroad, as applied to Ms. Lewis and other employees, and violates the Fourth and Fourteenth Amendments to the U.S. Constitution. The Mayor's Order 2012-84 does not provide a compelling state interest to override Ms. Lewis' Fourth Amendment Right against "Background checks, Investigations, Criminal Background Investigations," including "traffic record checks" without some options for Ms. Lewis to object to a search of her private records and affairs. Such searches of her private records are per se "unreasonable" without some safeguards to protect her constitutional rights. The D.C. Government failed to act reasonably to protect Ms. Lewis's Fourth Amendment Rights by, at the very least, allowing her and other similarly situated employees, to seek employment through HR with an agency where such Criminal Background Investigations are not required. Further, the Fourteenth Amendment Rights of Due Process, property and liberty interests require the D.C. Government to provide fair notice, and an opportunity to object to the proposed searches and seizures of Ms. Lewis' private records. The MO does not provide any procedure or safeguards to protect the employees' privacy rights.

23. On or about December 2012, the D.C. City Council enacted a resolution adopting the Mayor's Executive Order 2012-84.

24. The Fourth Amendment permits suspicion-less drug testing of certain safety-sensitive categories of employees -- for instance, employees who operate or pilot large vehicles, or law enforcement officers who carry firearms in the course of duty. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and applies to the states through the Due Process Clause of the Fourteenth Amendment. "Testing a urine sample, which "can reveal a host of private medical facts about an employee," and which entails a process that "itself implicates privacy interests," is a

search." [1]

25.  The basic question the MO did not address nor answer when implementing the drug-testing mandate is whether this search is reasonable. In the criminal context, reasonableness usually requires a showing of probable cause to obtain a search warrant.

26.  The Fourth Amendment does not bar the random drug testing of government employees in high-risk, safety-sensitive jobs, but it does require a job-category-by-category inquiry, and narrowly tailoring drug testing policy to the precise contours of constitutional protection. Instead, the MO casted a broad net to include all "*Employees of the Office of the Chief Medical examiner ("OCME"), and Department of Forensic Sciences ("DFS"), and any Other District Government Employee Having a Duty Station at the Consolidated Forensic ("CFL"), that due to the nature of work performed in the CFL, employees occupying positions which have duty stations at the CFL…*"

27.  The MO ensnares Ms. Lewis' position as HR Advisor, Management Liaison Specialist, with the Office of the Chief Medical Examiner, a non-sensitive position into which she was hired, and which has not been reclassified nor designated as high risk.  Her duties involve working with staffing and recruitment, conducting performance evaluations and other employee documentation, assisting with classification of positions and processing personnel actions.

28.  Her duties do not involve and have never involved any governmental "high-risk, safety-sensitive" matters. There is no "special need" for employees such as Ms. Lewis to be subjected to an invasion of their Fourth Amendment right of privacy, nor their right against unreasonable searches. Thus, the MO, as applied to Ms. Lewis and other similarly situated employees is unconstitutionally broad.  The District already had in place a policy for drug and alcohol testing for positions regarding child safety—a position for which this type of policy would be reasonably and legally warranted, unlike that of PLAINTIFF'S position.

29.  Claimant/Plaintiff Lewis seeks an Injunction ordering Defendant Mayor's Order and MO be quashed as to Ms. Lewis and other similarly situated employees because it violates the right of the

---

[1]  *American Federation Of State, County And Municipal Employees Council 79, Richard Flamm, v. Rick Scott, in his official capacity as Governor of the State of Florida*, (May 2013, 11 Cir.) No. 12-12908, citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989), see also *Chandler v. Miller*, 520 U.S. 305, 313 (1997)

people to be free from unreasonable searches, under the protection of the Fourth Amendment. Ms. Lewis also seeks an injunction ordering the Defendants to immediately direct all agencies and persons affected by Defendants' Mayor's Order 2012-84 to cease all drug-testing of employees until Defendants have proven by evidence obtained through a "job-category-by-category inquiry" that any affected employee's position is a "high-risk, safety-sensitive job" and that there is a "special need" for these employees to be subjected to an invasion of their Fourth Amendment right of privacy, and their right against unreasonable searches.

30. "To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing." *Id*. When the government alleges that special needs justify this Fourth Amendment intrusion, the government must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the employee and the government absence of such suspicion. *Id*

31. When the test of "a job-category-by-category" inquiry and balancing of Ms. Lewis' and other similarly situated employees' privacy expectations against the Government's interests," the Government interests justifying suspicion-less drug testing must be "compelling." A compelling interest is one "important enough to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy." *Id*.

32. The MO does not justify a Fourth Amendment intrusion when viewed against the United States Supreme Court's evaluations of five (5) suspicion-less drug testing policies in the last twenty-five years. [2] The MO does not identify a safety need for the warrantless search where on the job

---

[2]  (1). In *Skinner*, supra, government has a compelling need to test railroad employees, requiring suspicionless drug testing of workers involved in railroad accidents, where on-the-job intoxication was "a significant problem" that had resulted in "21 significant train accidents" in a ten-year period. [E]mployees engaged in safety-sensitive tasks, particularly those involved with the operation of heavy machinery or means of mass transit, may be subject to suspicionless drug testing."  *American Federation Of State, supra, at* 25-26

 (2) In Von Raab, the Supreme Court identified several other job categories that a suspicionless drug testing policy may cover. United States Customs Service's required urinalysis testing for three job categories: first, those directly involved in drug interdiction; second, those who carried firearms; and third, those who handled classified material. Id. at 660-61. The Court began by identifying the government's ***special needs*** with regard to the first two categories. Customs employees responsible for drug interdiction were "exposed to th[e] criminal element and to the controlled substances it s[ought] to smuggle into the country". The Court in Von Raab reasoned: "Because successful performance of their duties depends uniquely on their judgment

intoxication is a significant problem. Nor does the MO cite any evidence that Ms. Lewis and similarly situated employees are directly involved in drug interdiction, carry firearms, or handle classified material. Likewise, Ms. Lewis, and similarly situated employees, are not involved with heavy machinery, the operation of large vehicles, such as planes, trains, buses, or boats or the protection of young children, where a special need would justify a suspicion-less search. In general, Ms. Lewis, and similarly situated employees do not perform high-risk, safety-sensitive tasks to justify such mandated suspicion-less drug testing of all employees.

33.  Therefore, the D.C Government must come forward with the requisite special-needs showing for all categories of employees it seeks to test. For some categories, this showing may turn out to be quite simple and may amount simply to describing precisely the nature of the job and the attendant risks. Thus, for example, as to state law enforcement employees who carry firearms in the course of duty. Von Raab's holding makes it clear that those employees present the type of serious safety risk that justifies suspicion-less drug testing. For other categories of employees, however, the State must make a stronger and more specific showing. Thus, as to run-of-the-mill office employees such as Ms. Lewis, the D.C. Government has failed to demonstrate how those employees present a serious safety risk comparable to those recognized in *Skinner,* supra*, and its progeny.

## COUNT I

and dexterity, these employees cannot reasonably expect to keep from the Service personal information that bears directly on their fitness," and thus their privacy could not "outweigh the Government's compelling interests in safety and in the integrity of our borders." The Court noted the protection of "truly sensitive information" is "compelling," it did not  accept the Customs Service's designation of several classes of employees -- for instance, baggage clerks and messengers -- as belonging to this category." *American Federation Of State, supra, at* 27-28

(3)&(4)In Vernonia The Court upheld the constitutionality of two schools' policies of randomly drug testing student athletes, Vernonia, 515 U.S. at 648, and students participating in competitive extracurricular .The Supreme Court found that there was a special need in the public school context, where teachers were responsible for their young charges. See Vernonia, 515 U.S. at 661 *American Federation Of State, supra, at*. 28-29

(5) Chandler: Supreme Court rejected a Georgia statute that required all candidates for certain state offices to submit to a drug test at a time  of their choosing prior to the election .  See Chandler,  520 U.S. at  309-10. Georgia attempted to justify its policy based on "the incompatibility of unlawful drug use with holding high state office,". Unlike the railroad employees in Skinner or the law enforcement officers in Von Raab, "th[e Georgia] officials typically d[id] not perform high-risk, safety-sensitive tasks, and the required certification immediately aid[ed] no interdiction effort." *American Federation Of State, supra, at*. 29-30

### WRONGFUL TERMINATION
### IN VIOLATION OF PUBLIC POLICY
(Against Defendant Employer)

34. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

35. DEFENDANTS wrongfully and retaliatorily terminated the employment of PLAINTIFF Ms. Patricia Diane Lewis in violation of public policy.  DEFENDANTS terminated the employment of Ms. Lewis because she complained about the illegally mandated Background Checks, Investigations, and Criminal Background Investigations of all employees as a prerequisite to the Relocation to the Consolidated Forensic Laboratory.

36. DEFENDANT Tucker stated in the meeting:  "you only have until 4:00 pm today to sign the notification, or you will be fired."

37. Prior to her termination, on October 15, 2012, Ms. Lewis, through her attorney, asked her government employer to permit her to seek employment with another agency, or alternately, to exempt her from all of the background checks referred to in the MO.  The D.C. Government failed to grant this written request, opting to proceed resolutely with the wrongful termination of Ms. Lewis' employment.

38.  The MO is unconstitutionally overbroad, as applied to Ms. Lewis and other employees, and violates the public policies set forth in the Fourth and Fourteenth Amendments to the U.S. Constitution. The Mayor's Order 2012-84 does not provide a compelling state interest to override Ms. Lewis' Fourth Amendment Right against "Background checks, Investigations, Criminal Background Investigations," including "traffic record checks" without some options for Ms. Lewis to object to a search of her private records and affairs. Such searches of her private records are per se "unreasonable" without some safeguards to protect her constitutional rights.

39. The meeting providing PLAINTIFF and others similarly situated only provided a few hours notice, with no process to ask further questions or provide objection to the illegal mandate, and subsequently terminated her employment without providing Ms. Lewis with any proper and reasonable procedure.  DEFENDANTS thereby violated PLAINTIFF Ms. Lewis' right to procedural due process and her due process liberty interest pursuant to the Fifth Amendment to the

U.S. Constitution as a result of DEFENDANTS' termination of PLAINTIFF'S employment and DEFENDANTS' interference with PLAINTIFF'S opportunity to obtain future employment in her chosen career.

40. Said intrusion into Ms. Lewis' private medical affairs pursuant to the unlawful drug and alcohol policy is a violation of her right to privacy and constitutes discrimination based on her medical condition and disability.

41. DEFENDANTS and each of them terminated PLAINTIFF Ms. Lewis' employment in violation of these public policies, in violation of the D.C. Human Rights Act, and in violation of state and federal law prohibiting employers from retaliating against employees engaged in protected activities.

42. DEFENDANTS' failure to grant PLAINTIFF Ms. Lewis' request to permit her to seek employment with another agency violated PLAINTIFF'S property rights to her employment position and employment with the agency.

43. As a direct and legal result of DEFENDANTS' illegal and retaliatory conduct as set forth herein, PLAINTIFF has suffered and will continue to suffer substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, lost pension earnings, attorneys fees, medical expenses, future earnings and benefits, cost of suit, embarrassment and anguish, all to her economic and non-economic damage in an amount according to proof.

44. DEFENDANTS' acts, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent and done ill will and intent to injure PLAINTIFF and to cause her mental anguish, anxiety, and distress.  DEFENDANT'S acts were done in conscious disregard of the risk of severe emotional harm to PLAINTIFF and with the intent to injure, constituting oppression, fraud and malice, entitling PLAINTIFF to punitive damages against DEFENDANT Tucker.

Wherefore, Plaintiff prays for judgment as more fully set forth below.


**COUNT 2**
**INTRUSION OF FOURTH AND FIFTH AMENDMENT RIGHTS**
**IN VIOLATION OF 42 U.S.C. § 1983**

45. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

46. DEFENDANTS' actions and failures as alleged above as to PLAINTIFF Ms. Lewis and other similarly situated employees constitutes a policy, pattern, practice, and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  DEFENDANTS, while acting under color of state authority and law, deprived PLAINTIFF Ms. Lewis of her federal and statutory right to be free pursuant to the Fourth and Fourteenth Amendments, deprived Ms. Lewis of her right to due process under the Fifth Amendment pertaining to her liberty and property right, and from wrongful and intentional discrimination and retaliation based on her right to complain about such illegal treatment.

47. DEFENDANTS' MAYOR VINCENT C. GRAY, *in his official capacity as Mayor of the District of Columbia,* CHARLES T. TUCKER, SHAWN Y. STOKES, and ASHA BRYANT conduct, at all times as set forth above, constitutes violations, under color of law, of Claimant's right, privileges and immunities guaranteed to her by the First, Fourth and Fourteenth Amendments of the United States Constitution.  Further, DEFENDANTS' conduct violated Ms. Lewis' right to be free from discrimination and retaliation as set forth in the D.C. Human Rights Act and other state and federal statutes.

48. DEFENDANT Government of the District of Columbia violated Civil Rights Laws of the United States, 42 U.S.C. § 1983 when it failed to take steps to prevent DEFENDANTS MAYOR VINCENT C. GRAY, *in his official capacity as Mayor of the District of Columbia,* CHARLES T. TUCKER, SHAWN Y. STOKES, and ASHA BRYANT from taking these retaliatory actions when it had notice.

49. DEFENDANTS' actions have caused and continue to cause PLAINTIFF Ms. Lewis substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorneys' fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and anguish, all to her damage in an amount according to proof.

50. As to DEFENDANT Tucker, the acts of this Respondent as alleged herein, were intentional,

outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Ms.

Lewis and to cause her mental anguish, anxiety, and distress.  DEFENDANT'S acts were done in

conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure,

constituting oppression, fraud, and malice, entitling Plaintiff to punitive damages against this

Defendant only.

Wherefore, Plaintiff prays for judgment as more fully set forth below.


**COUNT 3**
RETALIATION IN VIOLTION OF TITLE VII

51. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though

set forth here in full.

52. DEFENDANTS' conduct as alleged herein constitutes retaliation based on medical condition and

disability in violation of Title VII because she engaged in activities protected by VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.  DEFENDANTS' actions have caused

and continue to cause PLAINTIFF Ms. Lewis substantial and significant loss of reputation and

professional injury, loss of promotional opportunities and other employment benefits, lost wages,

attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation,

embarrassment and anguish, all to her damage in an amount according to proof.  The above

harassing and discriminatory conduct violates VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §2000e et seq.  and entitles Ms. Lewis to all categories of damages, including

compensatory, exemplary and punitive damages as to the individual defendants.

Wherefore, Plaintiff prays for judgment as more fully set forth below.


**COUNT 4**
DISCRIMINATION AND RETALIATION
IN VIOLATION OF THE
D.C. HUMAN RIGHTS ACT

53. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though

set forth here in full.

54. An employee may not be discharged (or discriminated against) in retaliation for exercising a right

recognized under the District of Columbia's Human Rights Act. Nor may an employee be

discharged (or discriminated against) in retaliation for making a charge, testifying, assisting in an investigation, or opposing an unlawful discriminatory practice under the Act. Under the Act, employers may not discriminate on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, disability, matriculation, or political affiliation. D.C. Code § 2-1402.61.

55. In the instant matter, PLAINTIFF Ms. Lewis rightfully objected to the unlawful mandate thrown at her without proper due process in threat of termination for failure to immediately execute said documents.  DEFENDANTS'  subjecting PLAINTIFF Ms. Lewis to the unlawful drug and alcohol policy and requiring release of private medical information and the other wrongful acts alleged herein above constituted discrimination based upon Ms. Lewis' medical condition and disability. DEFENDANTS' ultimate termination of Ms. Lewis constitutes unlawful retaliation in violation of the D. C. Human Rights Act.

56. DEFENDANTS' acts as herein alleged have caused PLAINTIFF Ms. Lewis to suffer all of the damages as alleged above.

Wherefore, Plaintiff prays for judgment as more fully set forth below.

## COUNT 5
### VIOLATION OF THE FIFTH AMENDMENT
### TO THE U.S. CONSTITUION

57. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

58. DEFENDANTS have violated PLAINTIFF'S right to procedural due process and her due process liberty interest pursuant to the Fifth Amendment to the U.S. Constitution as a result of DEFENDANTS' termination of PLAINTIFF'S employment and DEFENDANTS' interference with PLAINTIFF'S opportunity to obtain future employment in her chosen career.

59. DEFENDANTS have intentionally and willfully terminated PLAINTIFF'S employment as well as other adverse actions, which constitutes a final agency action that is also subject to review pursuant to the Administrative Procedures Act.  The actions taken by DEFENDANTS against PLAINTIFF are arbitrary, capricious and in violation of law and the Fifth Amendment to the U.S.

Constitution.

60. DEFENDANTS' adverse action has also imposed a stigma and disability of PLAINTIFF that foreclosed her freedom to take advantage of other employment opportunities.

61. PLAINTIFF has been broadly precluded from pursuing her chosen career in government human resources, and DEFENDANTS' actions have seriously affected and destroyed PLAINTIFF'S ability to follow her chosen career path and substantially reduced the value of PLAINTIFF'S human capital in violation of her constitutional right to follow a chosen trade or profession without governmental interference.  These actions have irreparably damaged PLAINTIFF'S ability to obtain government employment, thus resulting in an effected change in PLAINTIFF'S status sufficient to implicate a liberty interest, with attendant needs for due process protection.  This binding effect is automatic and formal, and not merely placing PLAINTIFF at a competitive disadvantage relative to other applicants to other governmental positions.

62. DEFENDANTS have also violated their own rules, policies and procedures in taking the adverse action against Plaintiff as herein alleged as well as which deprived her of her Fifth Amendment right to due process, and all other violations of law as herein alleged.

63. DEFENDANTS should be ordered to reinstate PLAINTIFF to her position and DEFENDANTS should be enjoined form taking any future action against PLAINTIFF because the PLAINTIFF has been deprived of her right as herein alleged under the U.S. Constitution.

## COUNT 6
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

65. DEFENDANTS engaged in extreme and outrageous conduct.  The acts as alleged herein were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure PLAINTIFF Ms. Lewis and to cause her mental anguish, anxiety, and distress.  DEFENDANTS' acts were done in conscious disregard of the risk of severe emotional harm to Ms. Lewis and were a substantial factor in causing her harm, damage, and injuries and committed with the intent to injure, constituting oppression, fraud and malice, entitling PLAINTIFF TO

punitive damages as to DEFENDANTS MAYOR VINCENT C. GRAY, CHARLES T. TUCKER, SHAWN Y. STOKES, ASHA BRYANT.

**PRAYER FOR RELIEF**

a)      Order preliminary and permanent injunctive relief, as appropriate;

b)      Other declaratory relief as appropriate;

c)      General damages in an amount to be proved at trial;

d)      Special damages in an amount to be proved at trial;

e)      Punitive damages in an amount appropriate to punish Defendants Gray, Tucker, Stokes and Bryant to make an example of their conduct to the community;

f)      Award Plaintiff her costs and reasonable attorney fees;

g)      Pre-judgment and post-judgment interest; and

h)      Grant such other and further relief as the Court may deem just and proper.

Dated: April 9, 2015

SCROFANO LAW PC

Joseph A. Scrofano
Attorney for Plaintiff
Bar No.: 994083
406 5th Street NW
Suite 100
Washington, DC 20001
PH: 202-870-0889
FAX: NONE
jas@scrofanolaw.com

CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965

TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com
ATTORNEYS FOR PLAINTIFF
*Pro Hac Vice Motion to be filed*